UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY S.,[1] | : | Case No. 2:25-cv-132 |
| Plaintiff, | : | |
| | : | District Judge Michael H. Watson |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS**[2]

This matter is before the Court for review of Plaintiff Anthony S.'s claim challenging the Social Security Administration's denial of his application for Supplemental Security Income (SSI). This case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #11), and the administrative record (Doc. #7).

**I.      Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity."  42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

In the present case, Plaintiff applied for benefits on May 30, 2020,³ alleging disability due to schizophrenia, depression, an anxiety disorder, hallucinations, and a learning disability. (Doc. #7-6, *PageID* #510). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Matthew Winfrey on April 6, 2022. (Doc. #7-2, *PageID* #s 107-33). On May 9, 2022, ALJ Winfrey concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. (Doc. #7-3, *PageID* #s 196-224).

This matter was remanded by the Appeals Council on March 28, 2023. *Id.* at 225-29. Upon remand, ALJ Winfrey held a subsequent hearing via telephone on November 28, 2023, (Doc. #7-2, *PageID* #s 77-106) and issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful employment since May 30, 2020, the application date. |
| Step 2: | | He has the severe impairments of schizoaffective disorder; bipolar disorder; disruptive mood dysregulation disorder; cognitive/learning disorder; generalized anxiety disorder; depressive disorder; right knee meniscus tear with reinjury requiring two surgical interventions to the right knee with right knee degeneration/arthritis; and obesity. |
| Step 3: | | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work … except [Plaintiff] could frequently climb ramps and stairs. He could occasionally climb ladders, ropes, or |

---

³ Plaintiff previously filed for benefits on March 3, 2015. That application was denied by administrative decision on April 4, 2018. (Doc. #7-3, *PageID* #s 150-72).

2

       scaffolds. He could occasionally kneel or crawl. [Plaintiff] could perform simple, routine, repetitive tasks, but not at a production rate pace, such as one has with assembly line work. [Plaintiff] would be off task no more than 10 percent of the workday. He could tolerate occasional interaction with coworkers and the public, where interactions with others would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision. He could tolerate no more than occasional changes in duties and the work setting."

       He is unable to perform his past relevant work as a yard worker.

Step 5:  Considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7-2, *PageID* #s 47-67). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since May 30, 2020, the date the application was filed. *Id.* at 67.

  The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 42-67), Plaintiff's Statement of Errors (Doc. #10), and the Commissioner's Memorandum in Opposition (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

  Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is

"less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In his sole assignment of error, Plaintiff argues that the ALJ failed to properly evaluate the opinion from the medical expert, Jeffrey Andert, Ph.D. (Doc. #10, *PageID* #s 979-85). Specifically, Plaintiff argues that the ALJ failed to account for Dr. Andert's opinion limiting Plaintiff to interacting with a small group of six to eight coworkers on a routine and occasional basis in the ALJ's mental RFC finding. *Id*. at 983-86.

The Commissioner contends that the ALJ's more restrictive RFC limitation of "occasional interaction with coworkers and the public, where interactions with others would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision" – though not the same as Dr. Andert's opinion – more than adequately accounted for Dr. Andert's opined social interaction limitations. (Doc. #11, *PageID* #s 990-95); (Doc. #7-2, *PageID* #50).

An individual's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). The

Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"); 20 C.F.R. § 404.1546(c) (if the claimant's case is at the ALJ hearing level, the ALJ is responsible for assessing his RFC); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The ALJ's RFC assessment must be based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). Further substantial evidence must support the ALJ's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.).

In formulating Plaintiff's mental RFC, ALJ Winfrey considered the opinion of the medical expert, Dr. Andert, who reviewed the record and provided testimony at the administrative hearing on November 28, 2023. (Doc. #7-2, *PageID* #65) (citing Doc. #7-2, *PageID* #s 93-97). Dr. Andert testified that the record "consistently indicated a combination of a mood disorder as a depressive disorder and psychotic features, auditory and visual hallucinations, as well as some paranoid thought." *Id.* at 93-94. Dr. Andert asserted that the combination of those problems is considered a schizoaffective disorder, depressive type. *Id.* at 94.

As to the B criteria of the Listings, Dr. Andert found the Plaintiff was moderately impaired in his ability to understand and recall information; interact with others; and his ability to maintain concentration, persistence, and pace. *Id.* at 95. He found Plaintiff's ability for adaptation was markedly limited. *Id.* at 96. Dr. Andert opined Plaintiff would be limited to simple, routine and repetitive tasks, no more than two steps where judgment was required at each step to complete a

finish product; he was not capable of fast-paced work or production type activity; he could only occasionally interact with the general public; and he would be limited to occasional interaction with a small group of six to eight coworkers, with whom he interacted on a routine basis. *Id.* Dr. Andert also found Plaintiff would only be able to adapt to new tasks that were simple, routine and repetitive. *Id.* at 97. Dr. Andert concluded that Plaintiff would be off task 10% of the time. *Id.*

The ALJ found Dr. Andert's opinion "partially persuasive." (Doc. #7-2, *PageID* #66). As relevant here, ALJ Winfrey did not adopt Dr. Andert's social interaction limitations verbatim, including Dr. Andert's opined limitation of occasional interaction with a small group of six to eight coworkers, but found "the social functioning limitations generally consistent with [Plaintiff's] history of mental symptoms, including depression, anxiety, with reported increased anxiety in public settings, as well as breakthrough hallucinatory activity, with reports of intermittent irritability and rude behavior, especially prior to routinely taking medication." *Id*. at 65. Therefore, the ALJ limited Plaintiff to "occasional interaction with coworkers and the public, where interactions with others would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision." *Id*. at 50. However, the ALJ found Dr. Andert's opinion "partially persuasive" because evidence in the record showed that "with medication and treatment compliance, [Plaintiff] experienced improvement in mental health symptomology, admitting his moods were not bad, he was sleeping well, he was doing okay, [Plaintiff's] conditions were 'manageable,' he could get through any bad moments, he had minimal hallucinations, which he could manage, and he felt 'the best' he [had] felt in a while." (Doc. #7-2, *PageID* #66) (citing Doc. #7-7, *PageID* #s 931, 936).

For the following reasons, Plaintiff's argument that the ALJ did not account for Dr. Andert's social interaction limitation restricting Plaintiff to occasional interaction with a small group of six to eight coworkers within Plaintiff's mental RFC is not well-taken. First, the ALJ included the social interaction limitation in Plaintiff's mental RFC that Plaintiff would only have occasional interaction with the public and coworkers, consistent with Dr. Andert's testimony. (Doc. #7-2, *PageID* #50); *accord* (Doc. #7-2, *PageID* #96). Additionally, the ALJ's inclusion of the limitation that Plaintiff's contact with coworkers would be such "where interactions with others would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision" arguably further limits Plaintiff from interacting with coworkers than Dr. Andert's limitation of "a small group of coworkers, perhaps six to eight with whom he interacted on a routine basis." (Doc. #7-2, *PageID* #50); (Doc. #7-2, *PageID* #96). For example, the "without … tandem work" limitation is arguably more restrictive than only interacting with a small group of coworkers, as courts in this district have found that, when "tandem" is defined as "working in conjunction with each other," a limitation of no tandem work precludes Plaintiff from working with *any* coworkers in a sustained capacity. *See Brian M. v. Comm'r of Soc. Sec.,* No. 2:23-CV-2649, 2024 WL 2059775, at *6 (S.D. Ohio May 8, 2024) (Litkovitz, M.J.), *report and recommendation adopted*, No. 2:23-CV-2649, 2024 WL 2702009 (S.D. Ohio May 23, 2024) (Watson, D.J.) (finding the ALJ's limitation to no tandem tasks to be more restrictive than a limitation of "a small group of coworkers and supervisors" and therefore not inconsistent with each other). Combined with the ALJ's other social interaction limitations on Plaintiff's interactions with coworkers, Plaintiff would not be interacting with *any* coworkers on a routine basis, much less the six or eight Dr. Andert testified that he could

7

interact with on a routine basis. Thus, while the ALJ did not adopt Dr. Andert's limitation verbatim, he permissibly accounted for Plaintiff's social interaction limitations by providing even more restrictive limitations in Plaintiff's mental RFC.

Furthermore, the ALJ discussed some of the evidence related to Plaintiff's ability to interact with others in the workplace in his decision. (Doc. #7-2, *PageID* #s 51-53, 59, 65-66). For example, the ALJ acknowledged Plaintiff's testimony that he did not like to go to the grocery store by himself, and that he considers more than five people to be a lot of people. *Id*. at 51-52. However, ALJ Winfrey noted that Plaintiff would talk to his friends remotely and would go out to see them every few months. *Id*. at 53. Additionally, the ALJ observed that the record shows that, while Plaintiff could be "agitated, short, and rude," upon examination, these moods corresponded with medication non-compliance and several missed appointments. *Id*. at 59 (citing Doc. #7-7, *PageID* #905). However, the ALJ found that, once Plaintiff became compliant with medication, his symptoms improved, with Plaintiff "admitting his moods were not bad, he was sleeping well, he was doing okay, his conditions were 'manageable,' he could get through any bad moments, he had minimal hallucinations, which he could manage, and he felt 'the best' he [had] felt in a while." *Id.* 65-66 (citing Doc. #7-7, *PageID* #s 931, 936). Together, this evidence supports the ALJ's assessment of Plaintiff's mental limitations.

Finally, Plaintiff argues that the vocational expert's testimony in response to a hypothetical question containing the ALJ's assigned limitations was clearer than the testimony in response to a hypothetical question containing Dr. Andert's testimony, demonstrating that the ALJ did not incorporate Dr. Andert's opinion in Plaintiff's mental RFC. (Doc. #10, *PageID* #s 984-85). Plaintiff's argument is unpersuasive.

8

During the hearing, the ALJ first posed this hypothetical question to the vocational expert (VE):

> **ALJ**: Considering the same hypothetical individual and that same hypothetical with all of its limitations, but adding to that that interactions with others would be limited to the straightforward exchange of information without negotiation, persuasion, conflict resolution, close teamwork, tandem work or over the shoulder supervision, would that impact your responses?
>
> **VE**: The interactions as superficial can be managed in the jobs I provided.

(Doc. #7-2, *PageID* #101).

Subsequently, the ALJ posed this hypothetical to the VE:

> **ALJ:** If the hypothetical individual were limited – I already have, of course, a limitation to occasional interaction with coworkers and I qualified the quality of that limitation or, excuse me, that interaction. But if we were further limiting interaction to no more than six to eight coworkers, are you able to provide an opinion as to how that would impact the availability of work?
>
> **VE:** I would say that if the employee is working in a department with six people, that'll be fine. Some departments are bigger and may require more than six to eight workers. It will really depend on the company. It will vary.

(Doc. #7-2, *PageID* #102).

Plaintiff asserts that the VE's response "reveals that the two social interaction limitations are not the same, at least not vocationally speaking." (Doc. #10, *PageID* #985). Plaintiff is correct that the limitations are not exactly the same. As explained above, the ALJ's social interaction limitations are more restrictive than Dr. Andert's.

In sum, the ALJ did adopt Dr. Andert's opinion that Plaintiff should be limited to occasional interaction with general public and co-workers. However, the ALJ did not adopt Dr. Andert's opinion verbatim, finding social interaction limitations that were ultimately more

restrictive than Dr. Andert's opinion. These limitations are consistent with Dr. Andert's opinion and are supported by substantial evidence.

Based on the foregoing reasons, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. #10) be **DENIED;**

2. The Commissioner's non-disability finding be **AFFIRMED**; and

3. The case be terminated on the Court's docket.

January 12, 2026

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).